Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 1 September 1995, the date of plaintiff's alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and defendant was a duly qualified self-insured employer.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. Plaintiff's average weekly wage was $373.20.
4. A set of plaintiff's medical records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was fifty-one years old. Plaintiff began her employment with defendant in 1975 and was consistently employed by defendant through 1996.
2. In 1981, plaintiff began operating a splicing machine. As a splicing machine operator, plaintiff was responsible for feeding strips of veneer into the splicing machine. The veneer strips came to her workstation in stacks that were loaded onto a cart or truck. Customarily, plaintiff lifted the strips from the cart in bunches. She then fanned the strips to separate them from one another. She then placed them into the machine in an organized fashion, aligning the strips with one another to create the wood grain patterns required for the product being manufactured. Plaintiff was required to manually turn the strips from side to side or end to end in order to achieve proper grain alignment. Plaintiff fed the strips into the machine by leaning forward over the machine and pushing the strips with her upper extremities. Each veneer strip weighed less than one pound. When feeding the veneer strips into the splicing machine, plaintiff continually moved her upper extremities. Plaintiff produced seven to eight thousand feet of veneer sheets per work shift. During the 1990s, plaintiff generally worked eight hours per day, five days per week.
3. Plaintiff also worked as a "tailer." As a "tailer," plaintiff was responsible for catching and stacking sheets of veneer strips as they exited from the splicing machine. The duties of a "tailer" also required plaintiff to use her upper extremities. When "tailing" plaintiff was not required to move her upper extremities as quickly or as often as she did when operating the splicing machine.
4. Plaintiff also worked as a "patcher," repairing cracks and other defects in strips or sheets of veneer. Plaintiff used tape to repair these defects. Plaintiff obtained the tape from a tape dispenser using an underhanded pulling motion. She then manually applied the tape to the defective veneer using a tool.
5. Plaintiff continued working for defendant as a splicing machine operator through July 1995. At some time in July 1995, a painful lump suddenly appeared on the back of plaintiff's neck. No usual event or incident preceded or occurred simultaneously with the appearance of the painful lump. At this time, plaintiff was also experiencing pain in her upper back and across her shoulders. Plaintiff's upper back pain did not begin suddenly. Rather, she began experiencing this pain over a period of time.
6. Plaintiff reported to defendant that these symptoms were aggravated by her work duties and impeded her ability to operate the splicing machine. In September 1995, plaintiff presented to her family physician, Dr. Richardson. Dr. Richardson treated plaintiff with injections and physical therapy. Later, plaintiff was treated by Drs. Smith, Kelly, Naveira and Sutej, among others. Plaintiff's upper back, neck and shoulder pain was caused by fibromyalgia.
7. Other persons employed by defendant as slicing machine operators have experienced upper and lower back pain. These coworkers experienced similar symptoms while employed by defendant in positions other than the splicing machine operator position. However, there is no evidence of record that the cause of the pain experienced by these employees was fibromyalgia or that their pain was caused by their work as splicing machine operators. This anecdotal lay evidence from other workers with symptoms similar to plaintiff's does not rise to the level of proof necessary to establish that plaintiff's employment exposed her to a greater risk of contracting fibromyalgia as compared to members of the general public.
8. Plaintiff's fibromyalgia was caused or aggravated by her employment with defendant. However, none of the medical experts deposed by the parties was examined as to whether plaintiff's fibromyalgia was an ordinary disease of life or whether the specific conditions of her employment exposed her to a greater risk of contracting fibromyalgia as compared to members of the general public. Consequently, there is no competent medical evidence of record that plaintiff's employment with defendant placed her at an increased risk of contracting or aggravating her fibromyalgia as compared to members of the general public not so employed.
9. Plaintiff's description of her work duties and her physical symptoms was credible.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's fibromyalgia was not due to causes or conditions that were characteristic of and peculiar to her employment with defendant and, therefore, was not an occupational disease. G.S. § 97-53(13); Booker v. Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979); Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980); Lumley v. Dancy Const. Co.,79 N.C. App. 114, 339 S.E.2d 9 (1986).
2. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
This the ___ day of July 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/bjp